[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT TOWN'S MOTION FOR SUMMARY JUDGMENT
The plaintiff claims to have been injured when she fell down in the parking lot of a public school in Seymour. She sued the Town and the foreman of the Town's public works department as well as the Board of Education of the Town, the school superintendent the school principal and custodian. The Town and the foreman of the public works department have moved for summary judgment and the argument advanced in this second hearing of this motion which the court has permitted reargument on is that, pursuant to § 10-220 of the General Statutes, the duty to maintain school property clearly rests with the Board of Education. Section 10-220 does explicitly say the Board of Education "shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes." Not only is the duty placed on the Board, here deposition and testimony established the principal or school custodian were responsible for maintaining lighting — the plaintiff claims poor illumination caused or contributed to her fall (of which more later). The defendant Town's argument continues to the effect, that since the plaintiff cannot establish a duty owed by the town and its public works foreman, the action against them must fall — "[w]here there is no legal duty there can be no actionable negligence." Neal v.Shiels, Inc., 3, 12 (1974). Reliance on § 10-220 in this way is apparently a novel argument in the context of cases of this type. The defendant cites only one case in support of it: Steegv. Stamford, 2 CONN. L. RPTR. 67 (1990). There the court held that a town cannot be sued under the defective highway act, §13a-149 for injuries received in a fall on a sidewalk at the entrance to a high school as the school board and not the town is responsible for the maintenance of the sidewalk under § 10-220. CT Page 7637 But this decision is based on the peculiar language of §13a-149 which must be strictly construed. Section 13a-149 states any person injured by means of a defective road or bridge "may recover damages from the party bound to keep it in repair." Section 10-220, as noted, explicitly placed upon the Board of Education the duty of maintaining sidewalks at local schools.
But Steeg and the language of § 10-220 did not intend to abrogate the law of agency. In other words, the fact that the statute imposes this duty of care and maintenance on the Board does not mean that the Board is not an agent of a principal that can be sued as a result of its agency relationship. Heigl v.Board of Education, 218 Conn. 1, 3-4 (1991) appears to assume that a board is either an agent of the state or the town. What creates confusion, perhaps only for this court, is the case Heigl
cites for this proposition. Cahill v. Board of Education,187 Conn. 94, 101 (1982) . What Cahill exactly says at that page is: "Town boards of education, although they are agents of the state responsible for education in the towns, are also agents of the towns and subject to the laws governing municipalities." Thus boards seem always to be agents of the town although in some circumstances they also act as agents of the state and this becomes important when, ala Heigl, sovereign or governmental immunity issues must be decided. This seems to be made clear from a long discussion in Cheshire v. McKenney, 182 Conn. 256 (1980) which appears to be regarded as a leading case and is cited with approval in Cahill at 187 Conn. 101. In McKenney, the court said at pp. 257-260:
 The trial court, as noted above, concluded that the town board of education is an agent of the state, except as to budgetary matters, and that, therefore, the defendant is an employee of the state. The trial court correctly noted that the furnishing of an education for the public is a state function and duty. . . . This duty is placed upon the state by article eighth, § 1 of the state constitution and is delegated to local school boards by state statute. See General Statutes § 10-220. . . . There is no question but that local boards of education act as agencies of the state when they are fulfilling the statutory duties imposed upon them pursuant to the constitutional mandate of article eighth, § 1. . . .
 Local boards of education are also agents of the CT Page 7638 municipality that they serve, however. This court has recognized that "[t]he state, in the exercise of its policy to maintain good public schools, has delegated important duties in that field to the towns. . . ." General Statutes § 10-240 provides, in part: "Each town shall through its board of education maintain the control of all the public schools within its limits." (Emphasis added.) Local boards of education act on behalf of the municipality, then, in their function of maintaining control over the public schools within the municipality's limits. See also General Statutes § 10-220. Moreover, we have only recently reiterated that the powers of local boards of education are not defined only by state statute, and that a local charter may limit the power of the local board of education where its provisions are "not inconsistent with or inimical to the efficient and proper operation of the education system otherwise entrusted by state law to the local boards. . . ."
 The members of local boards of education are invested with the powers of their office by municipal action. They are either elected by local constituencies; General Statutes § 9-203; or, pursuant to the town charter, are appointed by an elected officer or body of the municipality. See, e.g., Charter of the city of New Haven § 173. A local board of education prepares an annual budget for submission to the local board of finance, or other applicable authority, for approval. General Statutes § 10-222. Section 10-222 provides in part: "The money appropriated by any municipality for the maintenance of public schools shall be expended by and in the discretion of the board of education." While the municipality may not exercise direct control over the activities of the local board, the board does expend moneys provided by municipal taxpayers upon the approval of a municipal authority.
 Moreover, we have expressly held that members of a local board of education are officers of the town they serve and that the persons employed by them in the performance of their statutory functions are employees of the town. Employees of local boards of education are therefore subject to valid provisions of the town charter. Although both Mase and Wallingford involved CT Page 7639 nonprofessional employees, there is nothing in the language or the reasoning of those cases that suggests that professional persons in a school system should not also be considered employees of the town. In Sansone v. Bechtel, supra, we held that "teachers as employees of a town board of education are . . . not employed in the state government." These considerations lead us to te conclusion that local boards of education act on behalf of the municipality they serve as well as in fulfillment of their state mandates and that their professional and nonprofessional employees are employees of the municipality and are subject to valid provisions of the municipal charter. The defendant, therefore, holds a position "under the government of the Town of Cheshire."
Thus in Burns v. Board of Education, 228 Conn. 640 (1994) a child was injured when he fell during school hours on an icy courtyard where he went to school. The first count in that complaint was brought against the Superintendent, the first and second count were brought against te board and the City of Stamford and were described by the court as derivative in nature,id. p. 643. But the court for the purposes of its discussion of immunity issues assumed without discussing that the superintendent was a municipal employee in deciding that the doctrine of governmental immunity applied to the case, id. p. 645. Principals are responsible for the actions of their employee agents so presumably that is what the derivative claim against the city was based upon.
Perhaps recognizing, although never explicitly conceding, that the board is an agent of some entity the town posits an either/or analysis. It claims the board was acting as an agent of the state because "the plaintiff . . . was on school premises during the course of her employment as a teacher's assistant with a private organization — Seymour-Oxford Nursery Childcare Association (SONCA)." Deposition testimony, which is uncontradicted, establishes that SONCA "is not associated with the town, is government funded, and state regulated. . . . Additionally . . . SONCA rents building space from the Board of Education." From all of this the town asserts in its brief that "the Board of Education was acting as an agent for the State in providing childcare, not the town," (page 4 of April 29, 1998 Supplemental Brief). But because the state or any entity, including a private entity, rents space from a party that does CT Page 7640 not transform such a lessee into a principal responsible for all injuries to its employees occurring because the party that rents the space did not properly maintain and care for the property and its safety. Even leaving this aside, because the board may be an agent of the state for some purposes does not mean it is not an agent for the town at the same time, cf. Cahill and McKenney,supra.
Furthermore because the child care program was run by the state and sought to achieve state objectives and the board rented space to this state program, that would not require a finding under ordinary agency theory that the board was not also acting for the benefit or in the interest of the town. Why on earth would it not be in the interest of a town to have such a program operate in a public school? There is no evidence that the board was forced to rent the facility to this program by the state or that Seymour residents were not allowed to work for the program or otherwise take advantage of what it had to offer.
But apart from dry and abstract considerations of agency law which assume unstated basic premises and are thus conclusory, there are real life considerations why a town should be considered an agent in these tort liability cases. In other words in imposing care and maintenance responsibility on the boards of education, section 10-220 says nothing as to whether in so acting a board acts as an agent of the towns or the state. But the towns under section 10-240 "maintain the control of all the public schools" within their limits. Towns approve budgets which directly relate as to how boards are equipped and staffed to handle their responsibilities of care and maintenance, board members are town officials and subject to local political control in how they perform their duties and board employees are town employees. It seems to make more sense to impose liability on the town as principal in these situations than the state unless perhaps the claimed injury results from an allegation that some state regulation, for example, dictated in explicit terms how a particular function relating to care and maintenance were to be performed by the board.
For the foregoing reasons the motion for summary judgment is denied.[1]
CORRADINO, J.